IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, *ex rel.* )
MICHAEL CHEEKS, )
) No. 05 C 1354
                          Plaintiff, )
) Suzanne B. Conlon, Judge
v. )
)
BRAD ROBERT, )
)
)
                          Defendants. )

## MEMORANDUM OPINION AND ORDER

Michael Cheeks was convicted of first-degree murder and home invasion, and was sentenced to concurrent prison terms of 35 and 20 years, respectively. Specifically, Cheeks was convicted of invading the home of the prosecution's chief witness, Maria Brown, and stabbing her companion. Cheeks and Brown lived together at a residence leased by Brown until approximately three weeks before the home invasion and murder. Cheeks petitions for a writ of *habeas corpus* based on the assertion the state knowingly used Brown's perjured testimony that he did not live in her home at the time of the home invasion and murder.

## BACKGROUND

After a state court bench trial in 1997, Cheeks was convicted of first degree murder and two counts of home invasion, and sentenced to concurrent prison terms of 35 and 20 years, respectively. Pet. ¶¶ 1-4; Ans. ¶¶ 2-3. At trial, Maria Brown testified that she lived at 514 Hickok Street in University Park on the date of the victim's murder. App. Ex. O at p. 2. She testified that Cheeks lived with her until approximately August 30, 1996, about three weeks before the murder. *Id.* On

1

August 30, Brown told Cheeks that he could no longer live in her house. *Id.* Cheeks' name was never on the lease and he never had a set of keys to the house. *Id.* According to Brown's trial testimony, a couple weeks after she told Cheeks to leave, he "moved himself back into the house." *Id.* She testified that he did not have permission to move back in, but she did not call the police to ask them to remove him. *Id.* at p. 3. Brown acknowledged that on the day before the murder, Cheeks was at her home in the morning. *Id.*

Brown testified at trial that on the day of the murder, she called Cheeks' mother and asked her to tell Cheeks not to come to her home that night because she was not going to be there. *Id.* Cheeks' mother relayed the message while still on the telephone with Brown. *Id.* Brown testified that she could hear Cheeks upset by the message. *Id.* She testified that the doors to her home were locked on the night of the murder, but a window above the kitchen sink was unlocked. *Id.*

The investigating officer testified that he found Cheeks' possessions in Brown's home and that Cheeks' identification cards showed Brown's home as his address. *Id.* at p. 4. During the trial, Brown sent Cheeks a letter that stated, "why did you come home why couldn't you stay where you was why did you have to come and fuck up everything." *Id.* at p. 5. Brown's letter also stated that she "must make [Cheeks] pay for what [he] did." *Id.* Defense counsel cross-examined Brown about her letter. At the conclusion of the bench trial, the judge found Cheeks guilty of first degree murder and home invasion. *Id.*

Cheeks appealed his conviction, arguing the court erred in finding him guilty of home invasion and sentencing him on two counts of home invasion. Ans. ¶ 3. The appellate court vacated one count of home invasion, affirmed the trial court's judgment in all other respects, and found sufficient evidence to convict him of home invasion. *People v. Cheeks*, No. 3-97-960 (3rd Dist. April

2

29, 1999) (unpublished order); App. Ex. D at p. 9. The Illinois Supreme Court denied Cheeks' petition for leave to appeal. *People v. Cheeks*, 185 Ill.2d 637, 720 N.E.2d 1097 (1999); Ans. ¶ 4.

Cheeks filed a *pro se* petition for post-conviction relief, arguing ineffective assistance of counsel for failing to raise Brown's perjury. Ans. ¶ 5. Cheeks' post-conviction petition was denied. *Id.* On appeal, denial of his post-conviction petition was reversed and remanded; the appellate court held that Cheeks' perjury claim should be considered under 735 ILCS 5/2-1401. *People v. Cheeks*, 3-99-924 (3rd Dist. January 25, 2002); App. Ex. I. The appellate court noted that the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1(a), was not implicated because "Cheeks did not assert that the State knowingly used perjured testimony from Brown." Ex. I at p. 3. However, it held § 2-1401 provided a means for obtaining relief from judgments based on false testimony without proof that the state knowingly used perjured testimony. *Id.* at p. 4. The Illinois Supreme Court denied the state's petition for leave to appeal. Ans. ¶ 7, App. Ex. K.

In connection with Cheeks' § 2-1401 petition, the parties entered a stipulation. Reply, Attachment 2. The parties stipulated that Brown sent Cheeks two letters after his conviction and that Brown would testify that the statements made in her letters are true. *Id.* at 1-2. The first post-trial letter states:

> the truth of the matter is I didn't want you to go free I wanted you to go to jail for my own personal reasons and who knows maybe if I had told the truth about you living their [sic] you wouldn't have so much time, but I seen a way to get you out of my life and I took it.

Reply, Attachment 3. The second post-trial letter states:

> I'm glad your ass will be spending the rest of your life their [sic]. Oh and no hard feelings about you not living their [sic] you see I wanted you to go to jail and if I had actually let someone know that you was living their [sic] you may have not went at least that is what was advised of me the very first night so you see I couldn't take that

3

chance of you getting out of doing under 10 yrs time. My revenge wouldn't be anything would it.

*Id.* at Attachment 4. The parties stipulated that Brown told an investigator Cheeks was free to come and go as he pleased from her home on the night of the murder. *Id.* at Attachment 5. The parties agreed that Brown would testify that the statements she made to the investigator were true. *Id.* at Attachment 2.

Cheeks' § 2-1401 petition was denied because:

[E]verything that could have possibly been gone into was gone into at the trial. [Brown] was thoroughly cross examined on the issue, and she conceded everything pretty much. . . he was there, his car was there, she was using his car. I think there was even some reference to baby-sitting, a few other things maybe. The only thing that could possibly change is . . . I didn't consider him living there. The only thing she could possibly add is I was considering him living there, and the issues were thoroughly examined. . . so the motion is denied.

App. Ex. S; Ans. ¶ 8.

Cheeks filed a motion to reconsider. The state court conducted an evidentiary hearing on the motion to hear Brown's testimony. In response to defense questions, she testified:

Q. In fact, on September 23rd of 1996, isn't it true that Mr. Cheeks did live with you?

A. I can't answer that with [a yes or no]. As I stated to you earlier–

Q. Let me ask you this: Did he live with you on a part time basis?

A. Yes, he did.

Q. And you considered him living there on a part time basis?

A. Yes, I did.

Q. And, in fact, he was free to come and go as he pleased, is that correct?

A. Yes, he was.

4

> Q. And all that was in effect on September 23rd of 1996?
>
> A. Yes, it was.

App. Ex. T, pp. 757-758. Upon examination by the state, she testified:

> Q. He had moved out of the house on August 30th or 1996?
>
> A. Yes, there was an altercation where he removed his belongings and left, yes.
>
> Q. Okay. And you testified at the trial that after he returned, you didn't make any efforts to have him removed from the residence, right?
>
> A. Yes, I did. I did say that.
>
> Q. Okay. What did you say?
>
> A. ...when he returned, I just let him come and go. I didn't say, you know, get out. I didn't call the police for him to leave or anything. I just let him come and go as he pleased.
>
> Q. And is that how you testified at the trial?
>
> A. I believe so.

*Id.* at 758. The state court denied the motion to reconsider after finding that Brown's testimony did not contradict her trial testimony. *Id.* at Ex. U. The court stated:

> [I]n looking through the transcript that I have here, it indicates that the defendant came in through a window. That would not seem to indicate to me that he would live there. That's kind of an unusual way of entering. . . . Cross examination included him coming back into the home after he had left in August, I think it was. The cross examination included a letter that Miss Brown wrote before trial . . . . When she testified today she did say yes and no, which is pretty much the position she took during the course of the trial. . . .
>
> I will concede that the other [post-trial] letter is a little more troublesome, but her testimony here again in Court was yes and no. And that was basically her position at trial. All these issues were covered before, as far as I can see, and for that reason the motion to reconsider is denied.

5

*Id.* at pp. 19-20.

The appellate court affirmed denial of the § 2-1401 petition. It determined that Cheeks did not prove by clear and convincing evidence that Brown's trial testimony was perjured. It found that the post-trial letters did not prove that Brown committed perjury. In so holding, the court stated:

> The defendant first argues that the post-trial letters unequivocally proved that Brown's testimony was falsified. We disagree. We note, as did the circuit court, that Brown testified at trial that she did and did not consider the defendant to live at 514 Hickok between August 30, 1996, and September 23, 1996. She testified to the same at the section 2-1401 hearing. We do not read the post-trial letters as indicating that Brown purposefully falsified her testimony in regard to whether the defendant lived at 514 Hickok.

App. Ex. O at pp. 8-9.

In affirming denial of Cheeks' § 2-1401 petition, the appellate court noted:

> Our review of the record reveals that the circuit court based its judgment primarily on the defendant's state of mind when he entered the house. Based on the defendant's mode of entry, the telephone call from Brown to the defendant's mother, and the fact that the defendant did not have keys to the home, the circuit court found that the defendant did not believe he had permission to enter the house and that he was guilty of first degree murder and home invasion. The defendant has therefore failed to establish that Brown's testimony controlled the circuit court's determination.

*Id.* The Illinois Supreme Court denied Cheeks' petition for leave to appeal. Ans. ¶ 10. Cheeks challenges the state courts' findings that Brown's trial testimony was not perjured.

## DISCUSSION

Cheeks argues the state knowingly used Brown's perjured testimony to secure his home invasion conviction.[1] The state argues the *habeas* petition should be denied because the state courts' decisions are not objectively unreasonable. A conviction obtained through the use of false evidence, known to be false by a state representative, must be vacated under the Fourteenth Amendment. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173 (1959). A new trial should be ordered if the defendant establishes that: (1) the prosecution's case included false testimony; (2) the prosecution knew, or should have known, of the false testimony; and (3) there is any likelihood that the false testimony could have affected the trier of fact's judgment. *United States v. Adcox*, 19 F.3d 290, 295 (7th Cir. 1994). The second element is satisfied if the state allows false testimony to go uncorrected after it discovers perjured testimony was used at trial. *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763 (1972). In deciding whether to grant a new trial based on the use of perjured testimony, courts must consider whether the defendant had an adequate opportunity to expose the alleged perjury on cross-examination. *Adcox*, 19 F.3d at 295.

Cheeks relies on the post-trial letters, statements Brown made to an investigator, the § 2-1401 stipulation, and Brown's testimony as evidence that Brown committed perjury at trial. *See* Reply attachments. The Illinois trial and appellate courts considered this evidence when rendering their opinions on Cheeks' § 2-1401 petition. Both the trial and appellate courts thoroughly examined this evidence and provided sufficient reasoning for their factual findings that Brown did not commit

---

[1] Cheeks failed to assert that the state knowingly used perjured testimony during the course of his state court proceedings. However, the state has not objected to Cheeks' petition on this basis. The procedural default defense has been waived. *See Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997).

perjury at trial. Factual findings by a state trial or appellate court are presumed correct in a federal *habeas* proceeding unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When considering a *habeas* petition, this court cannot conduct its own independent inquiry into whether the state court was correct as a *de novo* matter. *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S. Ct. 2140 (2004). The court must give deference to a state court's decision that is reasonable, or "minimally consistent with the facts and circumstances of the case." *Schulz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002). Under these standards, Cheeks' *habeas* petition must be denied.

The trial and appellate courts' findings that Brown did not commit perjury at trial are at least minimally consistent with the evidence. At trial, Brown testified that Cheeks moved out on August 30th, but returned a few weeks later without her permission. She testified that she did not consider him to be living with her on the date of the murder. At the § 2-1401 evidentiary hearing, Brown was asked whether Cheeks lived with her on the date of the murder. She testified that she could not answer the question with a yes or no. Although she then testified that he lived with her on a part-time basis on the date of the murder, she did not recant her trial testimony that Cheeks moved himself back into her house without her permission, or that she told him not to come over on the night of the murder. Cheeks had an adequate opportunity to cross-examine Brown on these issues. Moreover, as noted by the appellate court, her trial testimony was corroborated by independent evidence that Cheeks did not live with her on the date of the murder. The state presented evidence that Cheeks entered her house through a window and that he did not have a key to her house. Brown's post-trial letters support Cheeks' argument that Brown committed perjury at trial. However, as set forth above, there is conflicting evidence to support the conclusion that Brown did

not perjure herself at trial. It is not the task of this court to determine *de novo* whether Brown committed perjury at trial. 28 U.S.C. § 2254 (d); *Bennett v. Duckworth*, 909 F. Supp. 1169, 1173-74 (N.D. Ill. 1995). Rather, the state courts' factual determinations that Brown did not commit perjury must be presumed correct absent clear and convincing evidence to the contrary. Cheeks has not met this burden and his *habeas* petition must be denied.

July 13, 2005

ENTER:

Suzanne B. Conlon
United States District Judge